Booth, Judge,
delivered the opinion of the court:
This is a salvage service case. Liability to pay is conceded, the only issue involved being one of amount. The plaintiff seeks an award of $60,000, the defendant contends for a substantial reduction and while not insisting upon a certain sum strenuously objects to the claim as disproportionate to the service rendered. The plaintiff is a West Virginia corporation having its principal place for the transaction of business in New York City. Plaintiff maintains, and has for many years maintained a fleet of steamers, derricks, and complete wrecking apparatus devoted exclusively to salvage service.
On February 11, 1918, the plaintiff responded to a request from the proper officials to furnish immediate assistance to the steamer El Sol. The steamer El Sol went aground at about six o’clock in the morning of February 11, 1918, on a *331 sand bar from three-quarters to a mile distant from the beach on the New Jersey coast off the north end of Beach Haven. The El Sol was a steel-screw steamer of 6,850 tons deadweight capacity, 405% feet long, a 53-foot beam, and 27.4 feet deep. She was worth at the time $1,370,000 and had on board a cargo of over 4,000 tons of war supplies, 640 mules, and 10 horses, a cargo of the conceded worth .of approximately $690,000. The El Sol was at the time under a bareboat charter to the United States and employed in war sendee; she had sailed from Newport News, Virginia, on her preliminary voyage to New York, whence she was to proceed in convoy to Europe. The immediate need of the vessel was an important factor, and her location at the time of the salvage service was fraught with grave danger.
We need not advert in infinite detail to the service of the plaintiff; the findings disclose the transaction. It is sufficient for present purposes to state that after repeated efforts and the application of the best and most approved modern methods the plaintiff succeeded in setting the El Sol afloat about 8.15 p. m. February 13,1918. The defendant contends for various intervening incidents calculated to minimize the service rendered and reduce its value. Fortunately for the steamer and the salvor, the weather was ideal. This, of course, minimizes to some extent the inherent perils of the salvage service, but it does not dispel them; nor does the condition entirely remove the danger the steamer was in.
The record firmly establishes that the accident occurred at a point along the Jersey coast where immediate and great peril to a stranded vessel might well be anticipated at that particular season of the year. The steamer was undoubtedly hard aground; she was so firmly stranded in the sand that despite the efforts of the plaintiff and the jettisoning by the master of 447 tons of her cargo, it required more than two days to set her afloat, resulting in a loss of cargo amounting to $13,000. Again, it is said that the Army transport tug No. 3 contributed in no small way to the salvage service. The Army transport tug No. ■> was a powerful tug; she was 115 feet long, 27.5 feet wide, 15.5 feet deep, with a draft of *332 13 feet, built of steel, 284 gross and 193 net-weight tons’ capacity, 1,100 to 1,200 horsepower, and carried with her 150 fathoms of new 7-inch line. That this tug was utilized in the service is indisputable, and the fact of its use unmistakably indicates that it was of some importance.
The plaintiff indubitably was by far the primary factor in accomplishing a successful salvage. The plaintiff’s sole business was rendering salvage service. For this purpose plaintiff maintained all necessary vessels and equipment as well as a trained and experienced complement of crews and men in its employ. Its response to the call for help was prompt, and as we have found, its service was “ highly efficient.” The service rendered involved imminent danger to a large and most valuable vessel and cargo, a vessel urgently needed in the war service, and needed without delay. The defendant offered to pay the plaintiff $6,949.49; the plaintiff refused the offer. The sum offered, in our opinion, is far below the amount earned. To salvage a vessel and cargo whose combined worth totals $2,047,000 is, according to the standard of awards in similar cases, worth considerably in excess of the mere cost to the salvor of his service plus a reasonable profit.
The uniform rule in salvage cases is one of more or less liberality, awarding salvors not alone a sufficient sum to cover expenses and profit, but including therein a reward, a stipend of sufficient proportions to encourage the service and not discount its general importance. Considering, then, the factors which the defendant suggests, the labor expended by the salvor in conjunction with the Army transport tug No. 3, the promptitude and skill displayed in rendering the service, and aid in saving the property, the value of the property employed by the salvors and the risk assumed, the value of the property saved, and the degree of danger from which it was rescued, giving to all these the importance the facts establish, we are of the opinion that a fair and just award would be $42,000. Judgment will be awarded plaintiff. It is so ordered.
Moss, Judge; Graham, Judge; Hat, Judge; and Campbell, Chief Justice, concur.